# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 1225 | **DATE** | 2/12/2003 |
| **CASE TITLE** | Lampi Corporation vs. American Power Products | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Based on the Federal Circuit's revised claim interpretation of the "housing having two half-shells" limitation, we conclude that APP's Model 5544 literally infringes claim 11 of the '227 patent. Furthermore, after a careful analysis of APP's argument that claim 11 is invalid for obviousness by means of the Graham test, we find that claim 11 is not invalid for obviousness. Though it is certainly possible that this case may once again find its way to the Federal Circuit, we order the parties to appear in court for a status hearing on 3/4/2003 @ 9:00 a.m.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | 6 | |
| | Notices mailed by judge's staff. | | FEB 1 4 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 209 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | FEB 1 4 2003 date mailed notice | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMPI CORPORATION, )<br>an Alabama corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN POWER PRODUCTS, )<br>INC., a California Corporation )<br>)<br>Defendant. ) | No. 93 C 1225<br><br>Wayne R. Andersen<br>District Judge |

DOCKETED
FEB 1 4 2003

## MEMORANDUM OPINION AND ORDER

This case is before the Court on remand from the United States Court of Appeals for the Federal Circuit. For the following reasons, we conclude that defendant American Power Products, Inc.'s Model 5544 lamp literally infringes claim 11 of plaintiff Lampi Corporation's '227 patent and that claim 11 is not obvious.

### BACKGROUND

This Court is once again honored to render its legal opinion on this case. For a history of the facts and legal issues involved in this dispute, please see *Lampi Corp. v. American Power Products, Inc.*, 228 F.3d 1365 (Fed. Cir. 2000) (*"Lampi II"*); *Lampi, LLC v. American Power Products, Inc.*, 65 F. Supp. 2d 757 (N.D. Ill. 1999) (*"Lampi I"*); *Lampi Corp. v. American Power Products, Inc.*, 1997 WL 392239 (N.D. Ill. July 8, 1997); *Lampi Corp. v. American Power Products, Inc.*, 1995 WL 723764 (N.D. Ill. Dec. 5, 1995); *Lampi Corp. v. American Power Products, Inc.*, 1994 WL 501996 (N.D. Ill. Sep. 12, 1994). For purposes of this opinion, we will assume familiarity with these prior rulings.

In our opinion of August 31, 1999, we concluded, after the benefit of a bench trial, that defendant American Power Products, Inc. ("APP") had not infringed the asserted claims of plaintiff Lampi Corporation's ("Lampi") '227 patent. Additionally, we rejected APP's contention that the asserted claims were invalid. Following the issuance of our opinion, Lampi appealed our infringement ruling to the Federal Circuit and APP filed a cross-appeal as to our invalidity findings. On September 28, 2000, the Federal Circuit issued a ruling affirming in part, vacating in part and remanding this case for further proceedings consistent with its opinion. Specifically, the Federal Circuit determined that our interpretation of the limitation "housing having two half-shells" in claim 11 was incorrect and that we should re-evaluate whether APP's Model 5544 actually infringed the claim in light of the revised claim construction. Furthermore, the Federal Circuit instructed us to address APP's argument that claim 11 of the '227 patent is invalid for obviousness.

We asked the parties to file supplemental briefs addressing each of these issues and an oral argument was held. The matter is now fully briefed and ready for our consideration.

## DISCUSSION

In this opinion, we will address only those issues that the Federal Circuit remanded to us. All other issues have been resolved in a dispositive fashion by both this Court and the Federal Circuit and remain law of the case.

**I.  Does APP's Model 5544 Lamp Literally Infringe Claim 11 of Lampi's '227 Patent?**

A patent is infringed by "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent. . . ." 35 U.S.C. § 271(a). A determination of literal

infringement requires a two-step analysis. First, the court must interpret the claims-in-suit to ascertain their scope and meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996). The construction of a patent is purely a question of law for the court, not a jury. *Id.* at 979. Second, the fact finder must determine whether the defendant's allegedly infringing device falls within the scope of the claims as construed. *Id.* at 976. The plaintiff must establish by a preponderance of the evidence that the accused device meets every limitation of a claim either literally or as an equivalent. *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405-06 (Fed. Cir. 1996).

After we conducted a *Markman* hearing in this case, we construed the phrase "half-shells" in claim 11 as "two equal or corresponding parts forming a hard or firm outer covering into which the housing of the flourescent lamp is divided." *Lampi I*, 65 F. Supp. 2d at 766. On appeal, however, the Federal Circuit determined that we did not "explicitly address the meaning of the limitation 'housing having two half-shells' as such, particularly the issue of whether 'having' is an open or closed term in claim 11." *Lampi II*, 228 F.3d at 1375. Specifically, the Federal Circuit concluded that we construed the word "having" as a closed term when we should have considered it as an open term. *Id.* at 1376. Accordingly, the court rejected our interpretation of the "housing having two half-shells" limitation and instructed that the proper interpretation of the limitation is a "housing having *at least* two equal or corresponding parts forming a hard or firm outer covering into which the housing of the flourescent lamp is divided." *Id.* (emphasis added). The significance of this determination is that an accused device may infringe claim 11 of the '227 patent if the housing of the flourescent lamp includes more than just

3

two parts. Therefore, with the instructions of the Federal Circuit in mind, we now must decide if the Model 5544 lamp infringes claim 11 of the '227 patent.

In our initial ruling, we determined that Model 5544 did not infringe claim 11 because it lacked "half-shells" in that "it includes *five* parts and does not have two parts that are both 'equal or corresponding' to form an 'outer covering into which the housing ... is divided.'" *Lampi I*, 65 F. Supp. 2d at 772 (emphasis added). The Federal Circuit's amendment to the "housing having two half-shells" limitation discussed above decrees that our thinking on this issue was incorrect. The court's insertion of the qualifier "at least" establishes that an infringing device may include five parts as long as two of those parts are "equal or corresponding." Thus, the housing for Model 5544, which contains two base pieces, a plastic form, two end caps, and a translucent cover, may be viewed as infringing if at least two of these six pieces are equal or corresponding.

In the briefs submitted by the parties on this issue, Lampi argues that a common-sense viewing of the Model 5544 design dictates the conclusion that it infringes claim 11 while APP continues to argue that Model 5544 does not have "half-shells." We agree with Lampi. A careful examination of the exploded view of the Model 5544 design reveals that the two base pieces, or half-shells, form a "hard covering into which the housing of the flourescent lamp is divided." The remaining end caps and translucent cover merely provide the additional structure required to keep the nightlight intact. The issue we must now tackle is whether the two base pieces are "equal or corresponding." We conclude that they are.

In its initial post-appeal brief, APP has argued that the two base pieces are not equal or corresponding because they have different connectors. (APP Post-Appeal Brief at 14.) According to APP, this is significant because if the base pieces are not identical in structure and

4

design, then they cannot form a nightlight housing that infringes claim 11 of the '227 patent. We disagree. First, APP incorrectly assumes that the phrase "equal or corresponding" is synonymous with the word "identical." As we noted in our prior *Markman* ruling, "'equal' or 'corresponding' does not necessarily mean exactly alike or the same." 1997 WL 392239, at *6. That having been said, however, we conclude that the two base pieces are not "equal" as they have different connectors and the top base piece has a power switch (and accompanying electrical wiring) which turns the Model 5544 on and off.

Whether the base pieces are "corresponding" is a more interesting issue. Nowhere in our earlier rulings has the word corresponding been specifically defined. Claims 4 and 15 of the '875 patent use the term "corresponding" to describe the two shells which meet along a junction plane to form the housing. In a dictionary, the word "corresponding" is defined as "similar, analogous, or equal (to something)." WEBSTER'S NEW WORLD DICTIONARY 312 (3d ed. 1988). Using this intrinsic and extrinsic evidence, we find that the two base pieces of Model 5544 are corresponding. Similar to the use of the word in the '875 patent, the two base pieces meet along a junction plane to form the housing for the flourescent light. Further, the connectors on the two pieces are constructed in such a way that the housing can only be formed when the "male" connectors on the lower piece match up with the "female" connectors on the top piece. Specifically, the lower base piece has raised connector pins and thin tabs which "correspond" exactly to the pin openings and tab recesses on the top base piece. The connection of these two corresponding base pieces along a junction plane creates the primary housing for the flourescent light. Model 5544 is then completed, and the light secured, when the end caps and the translucent cover are added. Therefore, we conclude that the five-part Model 5544 literally

infringes the "half-shell" limitation in claim 11 of the '227 patent because the housing has at least two corresponding parts which form a hard or firm outer covering into which the housing of the flourescent lamp is divided.

## II. Is Claim 11 of Lampi's '227 Patent Invalid for Obviousness?

In part III.C of its opinion, the Federal Circuit required that, if we found literal infringement of claim 11 of the '227 patent, we should consider APP's obviousness argument pursuant to 35 U.S.C. § 103 as an affirmative defense to infringement of that claim. Because we concluded above that Model 5544 literally infringed claim 11, we now turn to APP's obviousness argument.

35 U.S.C. § 103(a) provides in relevant part that a claimed invention may not be patented "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *See also Graham v. John Deere Co.*, 383 U.S. 1, 13-14, 86 S.Ct. 684 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999). "Throughout the obviousness determination, a patent retains its statutory presumption of validity . . . and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." *Rockwell Int'l Corp v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) (citations omitted).

Determination of whether or not an invention is obvious is a legal conclusion. *Ruiz*, 234 F.3d at 662; *WMS Gaming*, 184 F.3d at 1355. However, the underlying inquiries are factual. *Ruiz*, 234 F.3d at 662; *WMS Gaming*, 184 F.3d at 1355; *Richardson-Vicks, Inc. v. Upjohn Co.*,

6

122 F.3d 1476, 1479 (Fed. Cir. 1997). The factual inquiries for obviousness are: 1) the scope and content of the prior art, 2) the level of ordinary skill in the field of the invention, 3) the differences between the claimed invention and the prior art, and 4) any objective evidence of non-obviousness, such as long-felt need, commercial success, the failure of others, or evidence of copying (the "*Graham*" factors). *See Graham*, 383 U.S. at 17-18; *Ruiz*, 234 F.3d at 662-63; *WMS Gaming*, 184 F.3d at 1355. The party asserting invalidity based on obviousness carries the burden of proof; however, that burden "is more easily carried when the references on which the assertion is based were not directly considered by the examiner during prosecution." *WMS Gaming*, 184 F.3d at 1355 (citing *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed .Cir. 1996) ("The presentation at trial of additional evidence that was not before the PTO does not change the presumption of validity or the standard of proof, although the burden may be more or less easily carried because of the additional evidence.")).

When a challenger asserts an obviousness defense or counterclaim based on two or more prior art references, there must be some suggestion or motivation to combine them. *See WMS Gaming*, 184 F.3d at 1355. "The suggestion to combine may be found in explicit or implicit teachings within the references themselves, from the ordinary knowledge of those skilled in the art, or from the nature of the problem to be solved." *Id.*

The essence of APP's obviousness argument is that there was a widely felt need in the marketplace for a self-supporting miniature flourescent lamp, and that, when the miniature flourescent bulb became commercially available, Lampi simply combined the bulb with housings that existed in the prior art. Specifically, APP asserts that claim 11 of the '227 patent was apparent and obvious because of old housings in the prior art, such as those described in the

7

Pollard and Williams patents. Before we begin a more detailed analysis of this argument using the *Graham* factors, we will first briefly describe the patent prosecution history for claim 11. Lampi's '227 patent had a somewhat troubled history in the Patent and Trademark Office ("PTO"). In the first two office actions, the PTO rejected the application, for what would eventually become the '227 patent, because of double patenting and for obviousness in light of the teachings of the Williams patent in combination with the Pollard patent. After the patentee made certain recommended changes to the patent application, the PTO determined that the amended design was sufficiently unique from the Williams and Pollard patents and the '227 patent was issued to Lampi. This historical discussion is significant for our obviousness analysis because it shows that the PTO was fully aware of the relevant prior art (i.e. Pollard and Williams) when it issued the '227 patent.

### A.     Scope and Content of the Prior Art

The scope of the prior includes "art that is 'reasonably pertinent to the particular problem with which the invention was involved.'" *Ruiz*, 234 F.3d at 664 (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535 (Fed. Cir. 1983)). "In order to prevent a hindsight-based obviousness analysis, we have clearly established that the relevant inquiry for determining the scope and content of the prior art is whether there is a reason, suggestion or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references." *Id.* (omitting citations). In conducting this analysis, the Federal Circuit has cautioned that patents developed from prior art references should not be found obvious "merely upon finding similar elements in separate prior patents . . . ." *Id.* at 665 (citing *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1575 (Fed. Cir. 1987)); *see also Arkie Lures, Inc. v. Gene*

*Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997) ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements.").

There is no true dispute between the parties as to the scope and content of the relevant prior art. In pleadings submitted by both sides, the parties acknowledge that the Williams, Pollard, Zeller, Walz, Lampi and common night light designs constitute the prior art at issue in this case. Each of these prior patents have contributed in meaningful ways to the prior art of miniature nightlights. APP has consistently alleged throughout the course of this litigation that if claim 11 of the '227 patent reads on the APP products in suit, then it equally reads on obvious combinations of the Williams, Pollard, Zeller, Walz, and earlier Lampi patents. While we may disagree with APP's legal conclusion, we find as a factual matter that the Williams, Pollard, Zeller, Walz, and Lampi patents constitute the relevant prior art.

**B.     Level of Ordinary Skill in the Field of Invention**

The determination of the ordinary skill in the art is an integral part of the *Graham* analysis. "Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field." *Ruiz*, 234 F.3d at 666-67. In other words, the burden is on APP to offer clear and convincing evidence that others of ordinary skill in the art would have thought the Lampi invention obvious. APP has failed to do this.

The bulk of APP's obviousness argument rests on its particularly thorough critique of the language of claim 11 of the '227 patent. APP spends a considerable amount of time dissecting each limitation in the claim and demonstrating its relationship to similar references in the prior art. With respect to this *Graham* factor, however, APP has provided no evidence, let alone clear and convincing evidence, that others of ordinary skill in the art considered the Micro Lampi obvious. In fact, the only reference to this factor in its post-appeal briefing is the statement that "APP has properly stated that the level of skill is shown by the prior art, citing *Chore-Time Equipment*." (APP Post-Appeal Reply Brief at 12.) In our estimation, this off-hand statement does not constitute the type of evidence necessary to satisfy this prong of the *Graham* test.

### C. Differences Between the Claimed Invention and the Prior Art

This third *Graham* factor is where the rubber really hits the road for APP's obviousness argument. As was mentioned above, APP contends that the Micro Lampi adds nothing unique to the field because all of the limitations in claim 11 were taught by the relevant prior art. APP describes a progression of historical events, from the energy crisis of the 1970's through the introduction of a miniature flourescent light bulb in the mid 1980's, that purportedly rendered the invention of the Micro Lampi wholly obvious to those of ordinary skill in the art. Specifically, APP, in its Post-Appeal Reply Brief, states that "under the motivation of the industry, still driven in the mid1980's by the Energy Crisis of 1974, still looking for an incandescent alternative . . . having tried one to see it fail . . . that as soon as the miniature flourescent bulb supplied the key element . . . a person of ordinary skill would have known what to do: make a miniature flourescent lamp housing like Lampi's old housing to fit the miniature bulb but with a self-supporting plug like Pollard's and Williams'." (APP Post-Appeal Reply Brief at 7-8.) To

10

support this position, APP has constructed a chart which places each limitation in claim 11 next to what APP has asserted is its reference, or combination of references, in the prior art. (*See id.* at 8-10.) Armed with this demonstrative evidence, APP asks this Court to conclude that the invention of the Micro Lampi was a pre-ordained event based on what already existed in the prior art and to find that the '227 patent is invalid for obviousness.

On the other side of the equation, Lampi urges us to reject the "hindsight-based" approach suggested by APP in its pleadings. While Lampi has acknowledged the existence of the prior art, it insists that the '227 patent was unique in the contributions it brought to that art - a position, we note, supported by the PTO's granting of the patent. Specifically, Lampi has identified at least three aspects of claim 11 that are unique over the prior art: 1) "the specifically added limitation that the tube is miniature"; 2) "the location of the plug is in the junction plane of the half-shells"; and 3) that "the lamp must be self-supporting and that the plug does the supporting." (Lampi Post-Appeal Brief at 5.)

Resolution of this issue is not easy. Both sides have made compelling arguments and the evidence is balanced. APP's demonstrative evidence, in chart form, shows that there is a significant connection between the limitations in claim 11 and the relevant prior art. On the other hand, Lampi is correct in identifying certain key differences in claim 11 that are not subject to being combined from various prior art references. This is a close call. Nevertheless, based on our review of the evidence in this case, we must conclude that claim 11 is not obvious. There are two primary reasons for this conclusion. First, the same obviousness arguments that APP raises before this Court were considered and ultimately rejected by the PTO during the patent application process. The PTO was aware of the prior art and it determined that claim 11 was

11

sufficiently unique to warrant a patent. As the Patent Office is infinitely more adept at interpreting patent claims than we are, we conclude that the office was correct in issuing the patent and we will preserve the statutory presumption of patent validity in this case. Second, we find that APP has not met its burden of proof on the issue of obviousness. As we mentioned above, this was a close call and there were strong arguments on both sides. However, evidence that results in a close decision necessarily can be neither clear nor convincing. The evidence simply does not justify the invalidity of claim 11.

### D.     Objective Evidence of Non-Obviousness

The fourth *Graham* factor involves an evaluation of objective evidence of non-obviousness, such as "commercial success, long-felt but unsolved need, failure of others, copying, and unexpected results." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000). In fact, the Federal Circuit has stated that evidence of secondary considerations "may often be the most probative and cogent evidence in the record." *Sratoflex*, 713 F.2d at 1538. "It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Id.*

In this case, there is considerable objective evidence of non-obviousness in the record. First, neither party can dispute that the Micro Lampi was initially a very successful product in the market. As Lampi notes in its brief, sales of the Micro Lampi increased every year between 1986 and 1991. (*See* Lampi Post-Appeal Reply Brief at 5.) This commercial success demonstrates that consumers in the market for nightlights considered the Micro Lampi to be a unique product. Second, as even APP acknowledges, there was a long-felt but unsatisfied need for a self-supporting miniature flourescent light. As APP explained in its briefs, the energy crisis of the

12

1970's generated considerable interest in the development of energy-efficient flourescent lights. Up until the time the Micro Lampi was introduced to the market in 1986, no one had perfected a miniature flourescent light that was commercially viable. Accordingly, it cannot be disputed that the Micro Lampi filled an important niche in the marketplace once the product was introduced. Thus, both of these objective considerations demonstrate that Lampi's '227 patent was unique over the prior art. The market and the industry realized that the Micro Lampi was a step forward for nightlights. Therefore, we conclude that claim 11 of the '227 patent is not invalid for obviousness.

## CONCLUSION

In summary, based on the Federal Circuit's revised claim interpretation of the "housing having two half-shells" limitation, we conclude that APP's Model 5544 literally infringes claim 11 of the '227 patent. Furthermore, after a careful analysis of APP's argument that claim 11 is invalid for obviousness by means of the *Graham* test, we find that claim 11 is not invalid for obviousness. Though it is certainly possible that this case may once again find its way to the Federal Circuit, we order the parties to appear in court for a status hearing to discuss the next phase of this case (i.e. damages) on Tuesday, March 4, 2003 at 9 a.m.

It is so ordered.

/ Wayne R. Andersen
United States District Court

Dated: February 12, 2003