# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 1225 | **DATE** | 7/20/2004 |
| **CASE TITLE** | Lampi Corporation vs. American Power Products, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For all of the foregoing reasons, we award Lampi $202,535.50 in damages plus prejudgment interest. The parties are ordered to submit calculations for prejudgment interest and any claims for costs on or before 8/20/2004.**

(11) ■ [For further detail see order attached to the original minute order.]

Document Number: 225

Date docketed: JUL 2 2 2004
Date mailed notice: JUL 2 2 2004

Courtroom deputy's initials: TSA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMPI CORPORATION, )<br>an Alabama corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN POWER PRODUCTS, )<br>INC., a California corporation, )<br>)<br>Defendant. ) | No. 93 C 1225<br><br>Wayne R. Andersen<br>District Judge |

## MEMORANDUM, OPINION AND ORDER

This matter is before the Court on the issue of damages in light of our February 12, 2003 ruling in which we concluded that defendant American Power Products, Inc.'s 5-piece flourescent night-light literally infringes claim 11 of plaintiff Lampi Corporation's U.S. Patent No. 5,169,227 and that claim 11 is not invalid for obviousness under 35 U.S.C. § 103. For the following reasons, we award Lampi $202,535.50 in damages plus prejudgment interest.

## BACKGROUND

For a history of the facts and legal issues involved in this dispute, please see *Lampi Corp. v. American Power Products, Inc.*, 2003 WL 732338 (N.D. Ill. Feb. 14, 2003); *Lampi Corp. v. American Power Products, Inc.*, 228 F.3d 1365 (Fed. Cir. 2000); *Lampi, LLC v. American Power Products, Inc.*, 65 F. Supp. 2d 757 (N.D. Ill. 1999); *Lampi Corp. v. American Power Products, Inc.*, 1997 WL 392239 (N.D. Ill. July 8, 1997); *Lampi Corp. v. American Power Products, Inc.*, 1995 WL 723764 (N.D. Ill. Dec. 5, 1995); *Lampi Corp. v. American Power Products, Inc.*, 1994 WL 501996 (N.D. Ill. Sept. 12, 1994). For purposes of this opinion, we will assume familiarity with these prior rulings.

Originally, Lampi Corporation accused two configurations of night-lights sold by American Power Products ("APP") as infringing claims of Lampi's U.S. Patent No. 5,169,227 (the "'227 patent"). In our opinion of August 31, 1999, we concluded, after the benefit of a bench trial, that APP had not infringed the asserted claims of Lampi's '227 patent. Additionally, we rejected APP's contention that the asserted claims were invalid.

Following the issuance of our opinion, the parties appealed to the Court of Appeals for the Federal Circuit. Thereafter, the Federal Circuit issued a ruling affirming in part, vacating in part and remanding this case for further proceedings consistent with its opinion. Specifically, the Federal Circuit affirmed our finding that the configuration of APP's 3-piece fluorescent night-light did not infringe any claim of the '227 patent. However, the Federal Circuit determined that our interpretation of the limitation "housing having two half-shells" in claim 11 was incorrect and that we should re-evaluate whether APP's 5-piece flourescent night-light actually infringed the '227 patent in light of the revised claim construction. In addition, the Federal Circuit instructed us to address APP's argument that claim 11 of the '227 patent is invalid for obviousness.

On remand from the Federal Circuit and after the parties submitted briefs and presented oral arguments, this Court entered a Memorandum, Opinion and Order on February 14, 2003 finding that APP's 5-piece fluorescent night-light infringed claim 11 of the '227 patent and that claim 11 is not obvious. We now must determine the amount of damages to be awarded Lampi to compensate for APP's sales of its infringing 5-piece fluorescent night-light.

## DISCUSSION

### I. Spoilation of Evidence

Before resolving the issue of damages, however, we first must address Lampi's threshold argument that it is entitled to an adverse inference based on APP's alleged destruction of relevant sales records and summaries. Lampi asserts that it is entitled to an inference that the sales records, which were destroyed, would have been unfavorable to APP. Specifically, Lampi argues that it is entitled to a negative inference that fifty percent of APP's total sales post-July 1993 were the infringing configuration based on the alleged spoilation of the monthly sales records. We disagree.

In *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874 (Fed. Cir. 1986), the Federal Circuit recognized that an adverse inference may be drawn when a party has destroyed evidence and that such spoilation of evidence was done in bad faith. 790 F.2d at 878. In *Eaton*, the defendants destroyed copies of certain documents. However, the originals had been previously produced during discovery. The Federal Circuit concluded that the test to determine when an adverse inference may be drawn does not apply when the evidence destroyed already had been produced. *Id.* The Federal Circuit recognized that the effect of the destruction of the copies was negligible because the original of the documents were, in fact, produced earlier in discovery. Moreover, the Federal Circuit pointed out that the plaintiff had not shown that the documents would have been critical or controlling on the issue of liability.

Similarly, in this case, APP has produced the underlying raw data, including the original invoices, from which APP's sales by model number for the relevant damages period can be calculated. Thus, the effect of the destruction of certain summary sales reports is negligible.

3

Indeed, we believe that Lampi would not have relied upon only the summary sales reports to quantify APP's sales but instead would have reviewed and analyzed the underlying raw data, which was produced, to calculate APP's sales. In addition, Mr. Kessler, APP's former vice-president of sales and marketing, testified that the monthly sales reports, which were destroyed, were summary reports and not accurate.

Based on the record before us, this Court finds, as a matter of fact, that APP did not willfully destroy any sales records, and we also do not believe that the reports were discarded in bad faith. Thus, we will not grant Lampi any relief based on the alleged spoilation of evidence, and we conclude that Lampi is not entitled to any adverse inference in its damages calculations.

## II. Lost Profits

Lampi argues that this Court should award lost profits for APP's sales of its infringing 5-piece flourescent night-light. Section 284 of title 35 of the United States Code provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. Beyond a reasonable royalty, a patentee may seek lost profit damages for infringement. To recover lost profits, Lampi must show "causation in fact, establishing that but for the infringement, [it] would have made additional profits." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Lampi bears the burden of proving lost profits by a preponderance of the evidence. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996).

Lampi proposes three theories under which it is entitled to recover lost profits. Lampi first asserts that it competed with APP in a two-supplier market and that it is entitled to an inference of "but for" causation. To establish lost profits under a two-supplier theory, Lampi must show: (1) the relevant market contains only two suppliers; (2) its own manufacturing and marketing capability to make sales that were diverted to the infringer; and (3) the amount of profit it would have made from these diverted sales. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003). Lampi's second theory is the *Panduit* test in which a court may infer "but for" causation if a patentee proves: (1) demand for the patented product; (2) an absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) quantifiable profits. *Panduit Corp. v. Stahlin Bros. Fibreworks, Inc.*, 575 F.2d 1152 (6th Cir. 1978). The Federal Circuit recently reconciled the two-supplier test with the *Panduit* test finding that "[i]n essence, the two-supplier market test collapses the first two *Panduit* factors into one 'two suppliers in the relevant market' factor." *Micro Chem., Inc.*, 318 F.3d at 1124.

Applying these theories to the facts at issue in this case, we are not persuaded that Lampi and APP competed in a two-supplier market or that Lampi can satisfy its claim for lost profits under the remaining factors of the *Panduit* test. Indeed, Lampi overlooks the fact that countless other night-lights, albeit non-flourescent night-lights, were available on the market prior to 1993 and then after 1993, the record shows that there were other flourescent light-lights available in the market. Lampi also ignores the availability of APP's non-infringing alternative the 3-piece style lamp, which became available on the market sometime in mid-1993. Moreover, we are not convinced, based on the record before us, that Lampi had the manufacturing and marketing

capability to make APP's infringing sales. Thus, Lampi cannot establish by a preponderance of the evidence that it should be awarded lost profits under either a two-supplier market theory or pursuant to the *Panduit* factors.

Lampi's third lost profits theory is premised on an alleged market share analysis. Lampi seeks lost profits on a market share basis from July 1993 through 1998. In its analysis, Lampi considers only the sales of APP and Lampi and does not include the market share of General Electric, U.S. Energy or any other flourescent night-light sellers. Indeed, Lampi admitted at trial that it was not introducing any evidence regarding the sales volume of any other flourescent night-light seller. Because Lampi's market share calculations do not recreate sales from the entire marketplace from July 1993 through 1998, these calculations are not based on a sound factual or economical predicate required to establish "but for" causation. *See Grain Processing*, 185 F.3d at 1350. Thus, Lampi's market share analysis is fatally flawed, and therefore, Lampi cannot show "but for" causation. For all of these reasons, we conclude that Lampi is not entitled to recover lost profits.

### III. Reasonable Royalty

Because Lampi failed to carry its burden of establishing lost profits, we will award Lampi a "reasonable royalty for the use made of the invention." 35 U.S.C. § 284. The methodology for arriving at a reasonable royalty is left to the court's discretion. *SmithKline Diagnostics Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). However, before the Court addresses the issue of what the royalty should be, we must first determine the recovery period and the number of infringing sales.

### A. Recovery Period

The first issue to consider in calculating Lampi's damages is to determine the appropriate period of recovery. The '227 patent issued on December 8, 1992. Lampi is an exclusive licensee of the '227 patent in the United States. When a patentee, or its licensee, manufactures a patented product but does not prove that the product was marked with the patent number, § 287 bars any recovery of damages prior to the date the infringer was "notified of the infringement." 35 U.S.C. § 287. Lampi, a licensee of the '227 patent, did not introduce any evidence at trial that the patented night-lights were marked with the patent number. Thus, damages may not be recovered before the date APP received notice of infringement.

The only evidence in the record of when APP was potentially notified of the alleged infringement is a December 17, 1992 letter counsel for Lampi sent to Mr. Wasif Siddiqi, president of APP. The letter enclosed a copy of the '227 patent and explained that Lampi was "studying this patent in connection with potential infringement of one or more of the claims thereof by products sold by your company, American Power Products, specifically, your plug-in type fluorescent lamp." A copy of the patent was included with this letter. Lampi argues that this letter is sufficient to constitute notification of potential infringement as required by § 287. We disagree.

Although APP received this letter from Lampi about its concern of potential infringement, the actual notice requirement of § 287(a) is satisfied only "when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI International, Inc. v. Advanced Technologies Laboratories, Inc.*, 127 F.3d 1462, 1470 (Fed. Cir.

7

1997). In this case, the notice did not come from the patent holder but rather from Lampi as a licensee of the patent. In *Lans v. Digital Equipment Corp.*, 252 F.3d 1320 (Fed. Cir. 2001), the Federal Circuit reiterated that "actual notice under § 287(a) 'must be an affirmative act on the part of the patentee which informs the defendant of infringement.'" 252 F.3d at 1327-28, quoting *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). In addition, the letter only states that Lampi is investigating the possibility of infringement. Lampi does not identify any specific activity much less any specific accused product or products that are believed to be infringing nor does it contain a specific charge of infringement. Finally, the letter does not contain any proposal to abate the alleged potential infringement.

Based on Federal Circuit precedent, it is the conclusion of this Court that the letter Lampi sent to APP on December 17, 1992 is not sufficient to trigger notification as required by § 287. Thus, Lampi cannot recover any damages for APP's sales of infringing lamps prior to February 26, 1993, which is the date on which Lampi filed the present action. *See* 35 U.S.C. § 287 ("Filing an action for infringement shall constitute such notice.").

### B. Number of Infringing Sales

Next, the Court must determine how many infringing night-lights were sold after February 26, 1993. After this Court issued its opinion finding infringement, we invited briefing on the issue of damages. In its damages submissions, Lampi argues that it is entitled to an adverse inference that fifty percent of APP's total sales were infringing. However, as stated above, we have concluded that Lampi is not entitled to any adverse inference based on its allegations that APP destroyed evidence. Thus, we must determine how many units APP actually sold of its infringing 5-piece flourescent night-light.

Lampi did not propose any number of infringing sales based on model number to differentiate between infringing units and non-infringing units sold. Instead, Lampi simply calculated APP's total sales of its night-lights (both infringing and non-infringing models) and decreased that number by fifty percent as its proposal for the number of infringing sales of the 5-piece night-light. However, we have rejected this calculation.

The only evidence in the record of the number of infringing sales based on unit or model number are those calculations proposed by APP. Lampi argues that we should reject APP's calculations because they rely on evidence that is not part of the record. Yet, we specifically requested that the parties submit materials to support their damages calculations. Indeed, the Court as well as the parties acknowledged that, if there were a finding of infringement, then additional evidence would have to be submitted for the damages calculations. Moreover, the evidence that Lampi relies upon to support its number of total sales is the same trial exhibits and underlying documents that APP uses to support its calculations of actual infringing units.

Lampi seeks damages for APP's sales of Model Number 3311, 3411, 3344, 4444, 5522, 5533, 5544, 5555, 5566, 5577, 5588, and 5599. APP, however, asserts that there is no evidence in the record regarding the configuration of APP's Model Numbers 3311 and 3411 and further argues that Model Numbers 3311 and 3411 night-lights had the non-infringing configuration. Lampi does not dispute or contradict these assertions. Therefore, our damages calculations will be limited to sales of APP's 5-piece night-lights under Model Numbers 3344, 4444, 5522, 5533, 5544, 5555, 5566, 5577, 5588, and 5599.

Both Lampi and APP point to and rely upon Exhibits 16 and 56-B in their damages presentations to support their position for the damages calculations and the number of APP's

infringing sales. Our review of these documents reveals that APP's sales by model number for February 1993 through June 1996 may be ascertained from documents produced by APP during discovery (AP10202-AP10205), which are the underlying documents from which Exhibit 16 was created, and APP's sales by model number from July 1996 through trial can be found in Exhibit 56-B and its underlying documents. It is significant to note that Exhibit 56-B was created by Lampi's own damages expert after he inspected APP's invoices and then complied a spreadsheet of information that itemized sales and pricing information from those invoices and that Lampi relies upon this exhibit and the underlying documents to support its proposed number for APP's total sales. Exhibit 56-B was created from that summary of APP"s invoices and the data contained in Exhibit 16. Indeed, APP accepted a stipulation at trial that Lampi's expert would testify as to this tabulations and that his work was accurate subject to a post-trial deposition of Mr. Egan and a decision by APP on whether cross-examination is needed.

Based on Exhibits 16 and 56-B, APP has submitted that the Court should calculate Lampi's damages based on a total of 405,071 infringing sales since the filing of the lawsuit on February 26, 1993. Based on the record before us and the materials submitted to the Court to support the parties' proposed damages calculations, we adopt APP's proposed number of 405,071 units as the number of APP's infringing sales.

### C. Amount of the Royalty

A royalty may be based upon an established royalty, if there is one, or if not, upon the result of hypothetical negotiations between the plaintiff and defendant. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir.1995) (en banc). There is not an established royalty rate in this case. Thus, to determine a reasonable royalty, we must analyze the results of a

hypothetical negotiation between APP and Lampi, which is an exercise in abstraction that "requires the court to envision the terms of a licensing agreement reached as the result of a supposed meeting between the patentee and the infringer at the time infringement began." *Rite-Hite Corp.*, 56 F.3d at 1554. Although performing this hypothetical analysis under 35 U.S.C. § 284 necessarily involves some measure of extrapolation and prediction, it nonetheless must rest on "sound economic and factual predicates." *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1311-1312 (Fed. Cir. 2002). That said, a wide range of factors can be relevant to such a hypothetical negotiation. *See, e.g., Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003); *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

As an initial matter, we note for the record that Lampi has suggested a $1.00 per unit royalty while APP has proposed a $.20 per unit royalty. A reasonable royalty is the amount that a person or company desiring to sell the patented product would be willing to pay as a royalty and still be able to sell the patented product at a reasonable profit. *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984). In this analysis, we also consider some of the *Georgia Pacific* factors, including, among others: (1) the relationship between the parties; (2) Lampi's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention; (3) the duration and term of the patent; (4) the utility and advantages of Lampi's night-light and the nature of the invention and its commercial embodiment; and (5) the extent of use of the invention and the value of that use. *Georgia-Pacific Corp.*, 318 F. Supp. at 1120. Based on these factors and the hypothetical negotiations

11

that this Court assumes would have occurred in December 1992, we have determined that the parties would have negotiated a royalty of $.50 per unit.

Lampi argues that APP would have been in a desperate situation during negotiations and that APP would not have had much leverage. However, at the time of the hypothetical negotiations, APP already had its non-infringing 3-piece night-light under development. Thus, it is this Court's belief, based on the record before us, that APP would have been in a stronger position to negotiate a lower royalty. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996) ("Wyko would have been in a stronger position to negotiate a lower royalty rate knowing it had a competitive non-infringing device 'in the wings.'"). Indeed, Mr. Hussain testified that APP would have stopped production rather than pay a royalty of more than $.15 based on the fact that APP was developing a non-infringing alternative. Given this backdrop, we do not believe that APP would have agreed to a $1.00 per unit, but rather only would have agreed to pay a lesser amount to Lampi until its non-infringing unit became available on the market.

In addition, the evidence illustrates that Lampi's patented night-light did not offer any greater functional or utilitarian advantages over other flourescent night-lights, including APP's products. Demand for APP"s non-infringing 3-piece night-light was strong, and there was no evidence presented that Lampi's patented night-light had any performance advantage over APP's non-infringing product. Moreover, because APP had a non-infringing alternative, its use of Lampi's invention was limited. After the '227 patent issued and APP's non-infringing product became available on the market, the value of the APP"s use of the invention diminished, and APP had no need to continue producing its infringing product. These considerations also weigh heavily in favor of a lower royalty rate.

However, we believe that APP's proposed rate of $.15 per unit royalty is too little. There is no evidence that Lampi had entered into any other licensing agreement for the flourescent night-light, and APP was selling its night-light at more than two dollars below Lampi's price. A royalty of $.15 per unit would have been insignificant under the circumstances. In addition, APP was selling its infringing night-light at the time Lampi's patent issued. Therefore, at the time of the hypothetical negotiation, the parties would have been considering a license for the full seventeen years of the life of the patent. APP would not have been able to use the negotiation tactic of threatening to wait until the patent expired to continue its sales of the infringing night-light. Thus, we believe that the Lampi would not have agreed to APP's proposed royalty of $.15 and would have been able to negotiate a higher rate. Based on the evidence presented to us at trial and in the materials submitted to us for the damages calculations, we conclude that a $.50 per unit royalty is reasonable and based on sound economic and factual predicates.

## IV. Wilful Infringement, Enhanced Damages and Attorneys' Fees

Lampi also requests that the Court enhance damages and award attorneys' fees. The patent statute authorizes a district court to "increase damages up to three times the amount found or assessed," 35 U.S.C. § 284, and "in exceptional cases [to] award reasonable attorney's fees to the prevailing party," 35 U.S.C. § 285. The party seeking an exceptional case status has the burden of proving that its case is exceptional by clear and convincing evidence. *Badalamenti v. Dunham's Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990).

Circumstances that support a finding of an exceptional case include inequitable conduct in the procurement of a patent, willful infringement, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. *Standard Oil Co. v. American Cynamid Co.*, 774 F.2d

448, 455 (7th Cir.1985). Willfulness is shown when, upon consideration of the totality of the circumstances, clear and convincing evidence establishes that the infringer acted in disregard of the patent, and that the infringer had no reasonable basis for believing it had a right to engage in the infringing acts. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir.1999). An inference of bad faith may be found through wrongful intent, recklessness, or gross negligence. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). Enhanced damages have been awarded when a party is found to have willfully infringed or to have acted in bad faith. *See Electro Med. Sys., S.A. v. Cooper Life Scis, Inc.*, 34 F.3d 1048, 1056 (Fed. Cir.1994). "The paramount determination . . . is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.*

Based on the totality of the circumstances, it is the opinion of this Court that APP had a good faith belief in the reasonableness of its defense of non-infringement and that there was little, if any, evidence of wilfulness or bad faith sufficient to meet the criterion of "exceptional case" or to warrant the award of attorneys' fees. Indeed, in our previous opinion, we recognized that "this was a close call and there were strong arguments on both sides." *Lampi*, 2003 WL 732338, at * 6. Thus, we decline to enhance damages or award attorneys' fees in this case.

## V. Prejudgment Interest

Finally, there is the matter of prejudgment interest. Prejudgment interest is appropriate pursuant to 35 U.S.C. § 284, and the parties do not dispute that prime rate is appropriate in this case. *See Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989) ("For the future, we suggest that district judges use the prime rate for fixing prejudgment interest

where there is no statutory interest rate."). However, Lampi argues that the prejudgment interest should be compounded monthly while APP asserts that interest should be compounded annually. Whether interest should be compounded is left to the discretion of the Court. *Bio-Rad laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). We agree with the parties that prejudgment interest should be awarded at the prime rate, and we find that the interest should be compounded monthly. *Cf. Mendenhall v. Barber-Greene Co.*, 1990 WL 156519, at *3 (N.D. Ill. Oct. 5, 1990). Thus, we conclude that prejudgment interest should be awarded on the total damages at the prime rates charged monthly by banks, with the interest compounded monthly.

## CONCLUSION

For all of the foregoing reasons, we award Lampi $202,535.50 in damages plus prejudgment interest. The parties are ordered to submit calculations for prejudgment interest and any claims for costs on or before August 20, 2004.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: July 20, 2004

15